## TRIANGLE DAIRY, Inc v BAROLAK

Ohio Appeals, 7th Dist, Mahoning Co

Decided Nov 9, 1934

W. F. Judd, Youngstown, for plaintiff.
Kenneth Lloyd, R. R. Miller, Youngstown, and J. B. Morgan, Youngstown, for defendant.

## OPINION

By SMITH, J.

We have carefully examined the record in this case and find that defendant Barolak at the commencement of this action had been engaged for about six years in the distribution of milk; that the route now operated by him had formerly been built up by defendant's brother, John Barolak, now deceased, and was purchased from the deceased brother's estate; that his brother, prior to his death, had been purchasing milk from Allen Frederick; that after he purchased this route he continued to purchase milk from said Frederick, but later Mr. Frederick incorporated his company as the Frederick Dairy Company. This company went into the hands of a receiver and was operated by the receiver. The plaintiff in this case purchased the assets of the Frederick Dairy Company from the receiver. Allen Frederick, in March of 1934, incorporated the Frederick Company, one of the defendants herein, to engage in the milk and dairy business, and was duly

licensed under the laws of Ohio. The defendant, after the incorporation of The Frederick Dairy Company, decided to buy milk from that company, and notified plaintiff it was going to do so, and on and after April 1st, 1934, did purchase its requirements from the Frederick Company. The record shows that all but a few of the customers to whom defendant Barolak delivered milk were customers, either procured by him or by his deceased brother during the time he was operating said route. The record shows that some few customers had been turned over to Mr. Barolak by the plaintiff. It seems that the manager of plaintiff's company solicited the Allied Council for customers in its territory, and that the customers who lived in the territory covered by defendant Barolak were turned over to him by the plaintiff. These customers paid their bills at plaintiff's office and defendant Barolak was charged with the milk delivered to them and given credit for the amount they paid. All of the milk delivered by defendant Barolak was purchased by him out-right and paid for and he distributed the same to his customers and received pay from them: In the event he did not receive pay for the milk distributed, it was his loss and not plaintiff's. The record also shows that the few customers turned over to defendant Barolak by the plaintiff were only with him for a few days. Plaintiff did not know who Barolak's customers were and did not have a list of them and was under no obligation to them whatsoever. The record also discloses that Barolak had no contract with the plaintiff for any period of time but purchased his milk as he needed it, and that either he or the plaintiff could cancel the contract at will.

It is claimed by the plaintiff that the relationship of employer and employe existed between it and Barolak. We are unable to concur with plaintiff's counsel in this regard. We find that the record shows that defendant Barolak was an independent contractor and in no sense an employe of the plaintiff. Having come to this conclusion, the only thing necessary to decide the issues in this case is the construction to be placed upon §2 of the Code of Fair Practices of the Milk Marketing Rules and Regulations for the Mahoning Valley Market Sales Area, effective March 1, 1934. This Code of Fair Practices, Exhibit F of said rules and regulations, has the general provision: "It shall be considered unfair," and then sets forth a number of conditions, of which §2 is as follows:

"To bribe or subsidize employes of other milk dealers or induce employes to leave milk dealers for the purpose of embarrassing such milk dealer or to secure his trade, nor permit any employe, or sell to any distributing broker, to cover the territory either directly or indirectly, on any route which he has covered as an employe of another milk dealer within one year following the termination of such employment."

While this section could have been better composed, we believe the meaning is clear. The first part of this section is not disputed, to-wit, that it means first it is unfair to bribe or subsidize employes of other milk dealers, second or to induce employes to leave milk dealers for the purpose of embarrassing such milk dealer or to secure his trade. In our opinion, the intent as to the remainder of this section is also clear by leaving out the words "or sell to any distributing broker", we believe answers this question. The remainder of the said section would then read as follows: "Nor permit any employe to cover the territory either directly or indirectly on any route which he has covered as an employe of another milk dealer within one year following the termination of such employment." We think the same words "or sell to any distributing broker" means any distributing broker who has been licensed as such under this law, that was formerly employed by a milk dealer. It would be considered unfair for any other milk dealer to sell milk to such distributing broker to be sold by him on the route which he covered as an employe of his former employer.

In our opinion, this construction clears up the confusion that has apparently existed in the mind of counsel for the plaintiff.

Having come to the conclusion that under the evidence in this record that the relationship of employer and employe never existed between the plaintiff and Barolak, we do not see what right plaintiff has to interfere with him in distributing milk as a distributing broker to his own customers. These customers never belonged to the plaintiff but at all times covered by the matters set forth in this petition have been the customers of Barolak. We do not see how the plaintiff in this case has in any way been injured by Barolak purchasing his milk for distribution to his own customers from any source that he desires.

It is admitted by counsel for plaintiff that there is no evidence in this record that either Barolak or the Frederick Company has violated any provision of the Code as to price in connection with the purchase

or sale of milk. The evidence in the record shows that Barolak was paying the same price to the Frederick Company for his milk that he would have been required to pay to the plaintiff. The prayer in the petition as to distribution is all based upon the purchase of milk by Barolak from the Frederick Company and the sale of milk by the Frederick Company to Barolak at a cost to him lower than three cents under the retail price. There is a total lack of any evidence in this record showing any violation in this particular. Therefore, the plaintiff under the terms of the prayer of its petition wholly failed to present any evidence that would warrant an injunction. Therefore, this case could have been decided without giving consideration to the proper construction to be placed on §2 of said milk bargaining rules and regulations.

Having reached these conclusions, the court therefore find that the plaintiff is not entitled to the relief prayed for. The injunction granted in this case below is hereby dissolved and the petition in this case dismissed. Final judgment is rendered in favor of the defendant at plaintiff's costs.

ROBERTS, J, concurs.
LYNCH, J, not sitting.